UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

ROBERT S. BLENDHEIM and DARLENE G. BLENDHEIM,

Debtors.

LEAD CASE NO. C11-2004MJP

CASE NO. C11-2004MJP
CASE NO. C11-2006MJP
CASE NO. C12-647MJP
CASE NO. C12-1255MJP

ORDER AFFIRMING BANKRUPTCY COURT

This matter comes before the Court on the consolidated bankruptcy appeals filed by Appellant Ocwen Loan Servicing, LLC. (Case Nos. C11-2004MJP, C11-2006MJP, C12-647MJP, and C12-1255MJP). Having reviewed the briefing of the parties (Case No. C11-2004MJP, Dkt. Nos. 11, 17, 19, 25, 37, and 39[1]), and the remaining record in these cases, the Court enters the following ORDER:

The Court AFFIRMS the orders of the Bankruptcy court and DENIES Lender's appeals.

[1] Unless otherwise noted, all references to the record in this case refer to the docket entry in the lead case, C11-2004MJP.

**Background**

This matter arises from the efforts of debtors Robert S. and Darlene G. Blendheim ("Blendheims") to prevent foreclosure on their condominium on Beach Drive in West Seattle. After obtaining several continuances of a foreclosure sale, the Blendheims sought protection under Chapter 7 of the Bankruptcy Code in May 2007. (AR 75.) In that filing, the Blendheims listed their condo as having a value of $450,000, subject to two liens, one securing a debt of $347,000 owed to HSBC Bank USA, National Association, and one securing a debt of $90,474.02 owed to HSBC Mortgage Services. (AR 618, 624.) Appellant Ocwen Loan Servicing, LLC ("Lender") is the servicing agent for the $347,000 debt. (Id.)

The Blendheims received a discharge of their unsecured debts in their Chapter 7 case on January 14, 2009. (AR 668-69.) On January 15, 2009, the day after receiving a discharge in their Chapter 7 case, the Blendheims filed a second bankruptcy under Chapter 13 of the Bankruptcy Code in order to deal with the secured debts relating to their condominium. (AR 383.)

On January 28, 2009, Lender filed a proof of claim in the amount of $419,498.75. (AR 383.) On October 9, 2009, the Blendheims filed an objection to Lender's claim on the basis that its proof of claim was not supported by sufficient evidence. (Dkt. No. 17 at 15.) Although Lender had attached a copy of the relevant deed of trust to its proof of claim, the Blendheims asserted that Lender failed to attach a copy of the promissory note. (Id.) The Blendheims also alleged that a copy of the note previously provided to them by Lender contained a forgery of Mr. Blendheim's signature. (Id.) Lender did not respond, and on November 18, 2009, Judge Overstreet entered an order sustaining the claim objection (the "default order"). (Id. at 16.)

On April 8, 2010, the Blendheims filed an adversary proceeding, asserting in their complaint, among other claims, that Lender's lien was avoided and unenforceable under 11

U.S.C. § 506(d) because Lender's claim was disallowed. (AR 120-144.) On May 10, 2010, Lender filed its answer to the Blendheims's complaint, and during a hearing on May 18, 2010, the Bankruptcy court advised Lender to take action to address the outstanding default order disallowing its claim. (AR 162.) On April 5, 2011, nearly eighteen months after the order disallowing claim was entered, and nearly one year after the Court had instructed Lender to address the issue, Lender filed a motion to have the disallowance order set aside, alleging mistake, inadvertence, surprise, excusable neglect, various due process issues, and inadequate service. (AR 79-84.)

Following a contested hearing on June 28, 2011, the Court declined to set aside the default order because Lender presented "no argument or evidence as to why its failure to respond [to the objection to claim] was due to mistake, inadvertence, surprise, or excusable neglect[,]" and because Lender presented no "rationale for waiting nearly 18 months after entry of the order to request reconsideration." (AR 106-07.) On July 11, 2011, the Blendheims filed a renewed motion for summary judgment for lien avoidance, and on October 19, 2011, after considering briefing and oral arguments from both parties, the court granted the motion for summary judgment, enabling the Blendheims to avoid the lien on the ground that the claim had been disallowed more than a year and a half earlier. (AR 287-89.)

Lender appeals five orders of the bankruptcy court: the default order disallowing its claim, the order denying reconsideration of the default order, the order voiding its lien, and the orders confirming and implementing the Blendheims Chapter 13 plan. (Dkt. No. 11 at 10, Dkt. No. 25 at 8.) Lender makes a number of arguments for why the Bankruptcy court erred. First, Lender asserts the bankruptcy court should have applied judicial estoppel to block the Blendheims from obtaining an order voiding their lien, because the Blendheims "made

diametrically opposed representations to the Bankruptcy court to avoid their obligations to both secured creditors." (Dkt. No. 11 at 27.) Second, Lender argues the Blendheims are not eligible for a discharge in their Chapter 13 case because they received a discharge in their Chapter 7 case less than four years before the order for relief in their Chapter 13 case. (Id. at 29.) Third, Lender argues that the bankruptcy court erred by denying it due process and violating the Bankruptcy Rules by voiding Lender's lien without the benefit of a true adversary proceeding. (Id. at 32.) Fourth, Lender argues that the bankruptcy court erred by finding that Lender's reconsideration motion was untimely. (Id. at 34.) Fifth, Lender argues that the bankruptcy court erred by finding the Blendheims filed their Chapter 13 case in good faith and by confirming their final Chapter 13 plan. (Dkt. No. 25 at 21.)

The Blendheims counter that Lender's notice of appeal was untimely with respect two of the five challenged orders, and that this Court therefore lacks jurisdiction to consider those orders. (Dkt. No. 17 at 9.) Specifically, the Blendheims assert the Court lacks jurisdiction to consider Lender's challenges to the November 18, 2009 order disallowing Lender's claim and the June 28, 2011 order declining to vacate that order, because the notice of appeal was not filed within 14 days of the date of entry of the judgment, order, or decree appealed from. (Id.); Fed. R. Bankr. P. 8002(a). Second, the Blendheims assert that judicial estoppel is inappropriate because the position they took with regard to the lien avoidance of the second lien was not inconsistent with their later position on the first lien because, at the time the motions were filed, the first lien had not been disallowed and the claim disallowance on the first position lien could have been vacated. (Dkt. No. 17 at 36.) Third, Blendheims assert that the bankruptcy court's finding that they were entitled to avoid Lender's lien upon confirmation of their Chapter 13 plan is supported by substantial Ninth Circuit authority. (Id. at 40-42.) Fourth, the Blendheims assert that Lender's

due process argument fails because the lien avoidance order was entered during an adversary proceeding where Lender was an active participant. (Id. at 49.) Fifth, the Blendheims assert the bankruptcy court did not err in finding they filed their Chapter 13 case in good faith. (Dkt. No. 37 at 25.) Lastly, the Blendheims ask the Court to award attorney's fees pursuant to the text of their deed of trust and RCW 4.84.330. (Dkt. No. 17 at 51.)

**Discussion**

A. Legal Standard

A bankruptcy court's conclusions of law are reviewed de novo and its factual findings are reviewed for clear error. Blausey v. United States Trustee, 552 F.3d 1124, 1132 (9th Cir. 2009). The timeliness of a notice of appeal is reviewed de novo. In re Delaney, 29 F.3d 516, 517 (9th Cir. 1994). The bankruptcy court's decision to grant or deny summary judgment is reviewed de novo. In re AFI Holding, Inc., 525 F.3d 700, 702 (9th Cir. 2008).

Decisions whether to invoke judicial estoppel are reviewed for abuse of discretion. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). To determine whether the bankruptcy court abused its discretion, courts (1) review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-61 (9th Cir. 2009).

B. Timeliness of Appeals

Lender's October 19, 2011 notice of appeal was not timely filed as it relates to the default order and the order denying reconsideration. (Dkt. No. 17 at 9.) Bankruptcy Rule 8002(a) states that a "notice of appeal shall be filed with the clerk within 14 days of the date of entry of the judgment, order or decree appealed from." Fed. R. Bankr. P. 8002(a). The untimely filing of a

notice of appeal deprives the appellate court of jurisdiction to review the bankruptcy court's order. In re Mouradick, 13 F.3d 326, 327 (9th Cir. 1994). The Court lacks jurisdiction over the bankruptcy court's default order because it was entered on November 18, 2009. (AR 106-07.) Similarly, the Court lacks jurisdiction over the bankruptcy court's denial of Lender's motion for reconsideration because it was entered on June 28, 2011. (Id.)

Lender's argument that the claim disallowance order and the order denying reconsideration were not final because they are "intertwined" with later orders in the case is unpersuasive. (Dkt. No. 11 at 22.) "A disposition is final if it contains a complete act of adjudication, that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter." In re Brown, 484 F.3d 1116, 1120 (9th Cir. 2007). In Brown, the Ninth Circuit held, in the bankruptcy context, that a district court's minute entry was not "final" for the purposes of calculating the time to appeal because it was "simply the memorialization of the proceedings." Id. Instead, the Ninth Circuit explained, courts should look to "*what* has been ordered," not only the format. Id. (emphasis in original).

Contrary to Lender's assertion, finality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole. See In re Mason, 70 F.2d 1313, 1316 (9th Cir. 1983.) An order is final when it "finally determines the discrete matter to which it was addressed . . . and determines and seriously affects substantial rights [and] can cause irreparable harm if the losing party must wait until bankruptcy proceedings terminate before appealing." In re Allen, 896 F.2d 416, 418 (9th Cir. 1990). Here, the claim disallowance order and the order denying reconsideration are final because they fully and completely determined the disallowance of Lender's claim. While these orders did not determine the effect on Lender's lien, this does not alter their status as final orders that "finally determine[] the discrete matter to which [they are]

addressed." Allen, 896 F.2d at 418. Lender's appeal of the claim disallowance order and the order denying reconsideration are untimely.

C. Bankruptcy Court's Denial of Motion for Reconsideration

The bankruptcy court did err by denying Lender's motion to reconsider its initial default order. Lender argues that the bankruptcy court "erred by failing to reverse the Default Order because there was neither a legal nor a factual basis to conclude Lender's reconsideration motion was untimely." (Dkt. No. 11 at 34.) But this ignores the bankruptcy court's detailed order, where it explained that Lender had "set forth no argument or evidence as to why its failure to respond was due to mistake, inadvertence, surprise or excusable neglect . . ." and did not provide the bankruptcy court with "any rationale for waiting nearly 18 months after entry of the order to request reconsideration." (AR 106-07.) The bankruptcy court did not deny reconsideration because Lender was tardy in filing its motion for reconsideration. It denied reconsideration because Lender provided no substantive basis for any alternate decision.

D. Judicial Estoppel

The bankruptcy court did not abuse its discretion by failing to apply judicial estoppel to bar the Blendheims from obtaining summary judgment voiding Lender's lien. Decisions whether to invoke judicial estoppel are reviewed for abuse of discretion. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). Courts in the Ninth Circuit consider three factors when applying judicial estoppel: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. In light of these factors, the bankruptcy court's decision not to apply judicial estoppel was not error. See United States v.

Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (reviewing court considers whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record").

First, the bankruptcy court reasonably found that the Blendheims' earlier position on the second lien "was not technically inconsistent with their having obtained disallowance of the First Position Lien claim," because it was possible that, "at the time these events took place, Debtors believed that one or both of the Orders would not be granted or would eventually be set aside, and they did not intend to eventually take action to avoid the First Position Lien[.]" (AR 432-33 n.4.) To support judicial estoppel, a litigant's later position must be "clearly inconsistent" with its earlier position. Hinkson, 585 F.3d at 1161-62. Given the shifting issues of this case, caused largely by Lender's lack of diligence in responding to the default order, the Blendheim's later position was not "clearly inconsistent," because they did not know whether the default order might be set aside. Id. Second, there is also no evidence that the bankruptcy court's decision not to apply judicial estoppel created any unfair detriment to Lender. As Judge Barecca explained, "most of the confusion, delay and uniqueness [was] caused by the prior lack of diligence of the former senior lien holder." (AR 497-98.) The bankruptcy court did not abuse its discretion in declining to apply judicial estoppel.

E. Availability of Lien Stripping

The Bankruptcy court did not err in finding that most authority within the Ninth Circuit supported the Blendheims' ability to file a Chapter 13 bankruptcy that could allow avoidance of a lien, even where a discharge was not available to them. (AR 381-98.) The Supreme Court has explicitly held that the Bankruptcy Code allows debtors to file so-called "Chapter 20" cases, where a debtor files a Chapter 13 after a Chapter 7. See Johnson v. Home State Bank, 501 U.S. 78, 87 (1991). However, the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act

has raised new questions about whether a Chapter 20 debtor can strip a lien through Chapter 13 plan completion, rather than through a discharge. Pub. L. No. 109-8, 119 Stat. 23 (2005). An emerging consensus in this Circuit indicates that lien stripping can be accomplished through Chapter 13 plan completion. See In re Tran, 321 B.R. 230, 235 (Bankr. N.D. Cal. 2010); In re Hill, 440 B.R. 176, 182 (Bankr. S.D. Cal. 2010); In re Okosisi, 451 B.R. 90, 100 (Bankr. D. Nev. 2011).

The authority cited by Lender ignores this emerging consensus. Lender places a great deal of weight on the Ninth Circuit's 1999 opinion in In re Leavitt, which states that a Chapter 13 case concludes in one of three ways: discharge pursuant to 11 U.S.C. § 1328, conversion to a Chapter 7 case, or dismissal. 171 F.3d 1219, 1223 (9th Cir. 1999). But it is misleading to argue that Leavitt shows there are only three options, because Leavitt occurred in the context of a Chapter 13 case, not a "Chapter 20" case, and because Leavitt was decided before § 1328(f)(1)'s discharge restrictions were added to the Bankruptcy Code, creating the question of whether lien stripping can occur upon plan completion. (Dkt. No. 11 at 29-30.)

Lender also relies heavily on In re Victorio, where the Southern District of California concluded that "lien stripping in a 'chapter 20' is permissible, but not permanent," and that Congress intended that "the only way a 'chapter 20' debtor can 'permanently' avoid liability on the debt is by payment in full during the course of the chapter 13 plan." 470 B.R. 545, 556 (S.D. Cal. 2012). But, as the Victorio district court acknowledged, this conclusion creates an extremely harsh result: a debtor who successfully completed a Chapter 13 plan, obeying all the requirements approved by the court, would see many of his debts spring back to life. Id. ("[T]he debts addressed in the Chapter 13, but not paid in full through the plan, still exist because they

have not been either satisfied under nonbankruptcy law nor discharged in bankruptcy.") (citing In re Victorio, 454 B.R. 759, 779 (Bankr. S.D. Cal. 2011).)

The Supreme Court's decision in Johnson v. Home State Bank points to a more equitable result. 501 U.S. 78, 87 (1991). In Johnson, the Supreme Court held that "Congress did not intend to categorically foreclose the benefit of Chapter 13 lien reorganization to a debtor who previously filed for Chapter 7 relief." Id. The Court explained, "[b]y its plain terms, § 1328(f) does not require another discharge when a later case is filed; it simply denies an untimely discharge in a later case." Id. (citations omitted). The logic of Johnson is applicable here: the Court should not impose a discharge requirement on the debtor's ability to strip a lien when none is required by statute. Id.; In re Frazier, 2012 U.S. Dist. LEXIS 32046, 28-29 (E.D. Cal. Mar. 8, 2012) (quoting In re Hill, 440 B.R. 176, 181-82 (Bankr. S.D. Cal. 2010). Instead of discharge, the lien strip would become permanent upon completion of all payments as required by the Chapter 13 plan. See In re Okosisi, 451 B.R. 90, 100 (Bankr. D. Nev. 2011). Applied here, 11 U.S.C. § 1328(f)(1) does not affect the Blendheims' ability to strip Lender's lien in their Chapter 13 plan because nothing in the Bankruptcy Code prevents Chapter 20 debtors from stripping liens upon completion of all payments as required by their Chapter 13 plan.

F.   Due Process

Lender's argument that the bankruptcy court failed to afford Lender due process because it entered an order avoiding its lien outside of the adversary process fails to withstand scrutiny. (Dkt. No. 11 at 32.) Bankruptcy Rule 7001(2) requires that any action determining the "validity, priority or extent of a lien" be brought by commencing an adversary proceeding. Fed. R. Bankr. P. 7001(2). In this case, Lender objects that while "its lien was technically voided in the Adversary Proceeding," it "was substantively voided by the Default Order." (Dkt. No. 11 at 33.) Contrary to Lender's argument, Lender's lien was not voided until the bankruptcy court granted

the Blendheims' motion for summary judgment in the adversary proceeding." (AR 430-34.) At this point, Lender had a full and fair opportunity to litigate the issue. (Id.) While the bankruptcy court's decision during the adversary proceeding may have been based on the Lender's failure to respond to the default judgment, this is not the same as voiding Lender's lien outside the adversary process. (Dkt. No. 11 at 33.)

G. Good Faith

The bankruptcy court's finding that the Blendheim's Chapter 13 case was filed in good faith is also affirmed. A debtor must propose a Chapter 13 plan in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a). Findings of good faith in the filing of a bankruptcy case are factual findings subject to review only where clearly erroneous. In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." In re Lepe, 470 B.R. 851, 863 (B.A.P. 9th Cir. 2012). Factors that courts consider in determining good faith include (1) whether the debtor misrepresented facts in the petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. In re Leavitt, 171 F.3d 1219, 1224 (9th Cir. 1999) (citations omitted). No single factor is dispositive; the Court is to apply the "totality of the circumstances" test. Id.

In this case, the Bankruptcy court found the Blendheims did not file in an inequitable manner because they "had valid reorganization goals other than lien stripping." (AR 393). Analyzing the second factor, the Bankruptcy court found the Blendheims had filed no bankruptcies other than the current Chapter 7 and Chapter 13 cases, and that the timing of their filing did not show bad faith because "[m]any Chapter 13 debtors filed for bankruptcy on the eve

of a foreclosure sale as a last resort." (AR 395.) There is no indication that the Blendheims filed in order to defeat state court litigation, and the bankruptcy court did not find the Blendheims had engaged in any egregious behavior. (Id.) In sum, there is no basis for finding that the bankruptcy court's finding of good faith was clearly erroneous.

H. Attorneys' Fees

Lastly, the Blendheims assert that they are entitled to attorneys fees pursuant to the provision in the deed of trust awarding Lender "reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." (Dkt. No. 17 at 51, citing AR 339.) In support of their argument, the Blendheims cite to RCW 4.84.330, which converts unilateral attorneys' fees provisions into bilateral provisions. Id.

The Blendheims' argument asks the Court to go too far. While their complaint in the adversary proceeding contained a number of claims relating to their loan documents, the Blendheims moved for and obtained summary judgment on one single issue: because Lender no longer had a claim, its lien was void. (Dkt. No. 19 at 23.) This case involves pure bankruptcy issues that were unrelated to any party's rights under the deed of trust. (Id.) Because no aspect of this appeal involves the deed of trust or any of its terms, this action is not "on the contract," so RCW 4.84.330 does not apply. See Boguch v. Landover Corp., 153 Wn. App. 595, 615 (2009). The Blendheims are not entitled to attorneys' fees.

**Conclusion**

The bankruptcy court did not err in declining to apply judicial estoppel, permitting lien avoidance upon completion of a Chapter 13 plan, or finding that the Blendheims Chapter 13 case was filed in good faith. Lender's objections regarding due process and the basis for the bankruptcy court's reconsideration order are unpersuasive. The bankruptcy court's orders are affirmed in their entirety.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 29th day of March, 2013.

Marsha J. Pechman
Chief United States District Judge